Date signed April 25, 2013



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| In re: : | |
| : | |
| BALLA MOUSSA KEITA : | Case No. 12-19970-PM |
| : | Chapter 13 |
| Debtor : | |

### MEMORANDUM OF DECISION

      This bankruptcy case under Chapter 13 is before the court on Debtor's First Amended Objection To RevitaLending, LLC's ("Revital") Proof of Claim in the sum of $717,410.16 (the "Claim"). The Claim consists of principal in the sum of $650,000.00 and various charges aggregating the difference. It is secured by a residence located at 13111 Piney Meetinghouse Road, Potomac, Md., now occupied by Debtor's spouse, Danielle Keita.

<u>BACKGROUND</u>

      This is the second case filed by Debtor. He filed Case No. 10-12289 under Chapter 7 on February 2, 2010. That case was designated as a 'no asset' case, and in due course Debtor received a discharge on July 16, 2010. It was closed without any distribution to the creditors, scheduled as holding claims aggregating $339,513.37. Debtor's Schedules filed in that case listed assets totaling $6,547.00, consisting primarily of clothing and furniture; an interest in "Sivita - Gunia (sic), Africa" scheduled at $100.00; and stock in "Sivita USA, Inc." scheduled at $100.00.

      The instant case was filed on May 25, 2012. Debtor has scheduled assets including a home owned solely by Debtor in Conakry, Guinea, valued at $52,000.00; the residence located at 13111 Piney Meetinghouse Road, Potomac, MD 20854 owned jointly by Debtor and his wife,

valued at $1,500,000.00 (the "Property"); and the same miscellaneous assets listed in the prior case, except that the values of the Sivita entities are stated as "unknown," as is a "Claim against Government of Guinea, Africa for damage to Sevita [sic] Africa." The only creditor scheduled in the present case is Revital, as the holder of an undisputed claim in the amount of $650,000.00, secured by the Property.

While the record is woefully inadequate, such as the absence of any loan documents or the settlement sheet for the purchase of the Property, it appears that as partial funding for the purchase, Debtors borrowed $650,000.00 for a 12-month term from Revital.  A copy of a "Purchase Money Deed of Trust" executed by Debtor and his wife "by POA Toumany Keita" on May 5, 2011, and recorded May 19, 2011, is appended to the Claim, and an unexecuted copy of a document entitled, "Commercial Deed of Trust Note" (the "Note") appears in the record as an exhibit to Debtor's Response to Revital's Opposition to Debtor's Objection to the Claim. The Note contains blank spaces where a specific date would be shown. It provides that $104,000.00 of the loan proceeds would be held in escrow by Revital to insure payment of interest accruing at an annual rate of 16% over the one-year term of the loan. Paragraph 3 of the Note, entitled "Payments," provides in part that, "the entire principal balance of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be payable by Borrower in full Twelve (12) months from the date hereof (the "Maturity Date")." Paragraph 5 of the Note, entitled "Borrower's Failure To Pay As Required," provides in part that,

> The entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:
> a. If default be made in the principal payment due under this Note and such default shall continue for a period of five (5) calendar days after the due date thereof;
> . . .
> Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, . . . the holder of this Note may . . . charge interest to the Borrower which shall accrue on the unpaid principal balance of this Note at the rate of Twenty-four percent (24%) per annum (the "Default Rate").
> . . .
> In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to a collect a "late charge" in an amount equal to ten percent (10%) of such installment.

Appended to the Claim is a document entitled "Default Statement" listing an unpaid principal balance of $650,000.00 and itemizing various additional charges, consisting mostly of an item listed as a "Default Fee" in the amount of $65,000.00.

Revital filed an objection to Debtor 's Plan filed June 27, 2013, in part based upon the proposition that Debtor was seeking to modify a claim secured only by a security interest in real property that is Debtor's principal residence. In an opinion filed December 12, 2012, the court pointed out that by virtue of the amendment to 11 U.S.C. § 1322(c)(2), the Debtor could propose a plan that would pay the entire amount due Revital over the term of the plan. To that end, Debtor filed a plan providing for payments of $13,406.00 monthly for 60 months. Such a plan might be feasible because as the court noted in its earlier memorandum, Debtor was able to raise more than $1 million to purchase the Property less than a year following his discharge in his 2010 no-asset Chapter 7 case.

The Objection essentially asserts that the "lender fees . . . are unreasonable, unconscionable, exorbitant and another way for RevitaLending to increase its claim." No legal authority is cited for this proposition. Debtor asserts that "the proper interest rate to be paid on this claim pursuant to *Till* [*v. SCS Credit Corp.*, 541 U.S. 465 (2004)] is 4.25%." Debtor prays for allowance of the Claim in the amount of $650,000 and reduction of the interest rate to 4.25%.

Revital's Opposition asserts that,

> The fees asserted in the Proof of Claim were all contractually agreed to, and contingent upon Revital providing the loan to the Debtor. Without the protections afforded by these fees, Revital would not have provided funding to the Debtor for the purchase of the Property, as the risk would have greatly outweighed any reward from conducting business.

Revital's also argues that an objection to a proof of claim is not the proper mechanism to seek modification of the interest rate on a secured loan, but that relief should be sought through a motion to modify a secured debt pursuant to 11 U.S.C. §506.

DISCUSSION

Debtor may not use an objection to a proof of claim as a vehicle to reduce the interest rate on the loan to 4.25% pursuant to *Till*. Revital is an oversecured creditor. Pursuant to 11 U.S.C. §1325(a)(5)(B)(ii), Debtor can only cram down the interest rate to be paid to Revital under a plan and then only as of the effective date of the plan. Until the effective date of the plan, the Debtor must pay the contract rate of interest. As noted in the case of *In re Garner*, 663 F.3d

1218, 1219-1220 (CA11 2011):

>Section 506(b) of the Bankruptcy Code is an exception to the general rule that a creditor cannot claim interest accruing on debts during bankruptcy:
>
>>To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.
>
>11 U.S.C. § 506(b). An oversecured creditor can recover post-petition interest under [] Section 506(b) as part of its allowed claim. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). There is no dispute that interest accumulated between filing the bankruptcy petition and confirmation of the bankruptcy plan is calculated at the contract rate under Section 506(b). *In re Delta Res., Inc*., 54 F.3d 722, 730 (11th Cir.1995) (*citing In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1407 (5th Cir.1986)).

*See also Rake v. Wade*, 508 U.S. 464, 471 (1993) (Interest accrues under §506(b) as part of the allowed claim from the petition date until the confirmation or effective date of the plan.); *In re Consolidated Properties Limited Partnership*, 152 B.R. 452 (BC Md. 1993); *In re Gift,* 469 B.R. 800, 810 (BC M.D. Tenn. 2012). Accordingly, the court will consider the application of *Till* in the context of the April 30, 2013 hearing on confirmation of Debtor's Second Amended Chapter 13 Plan filed January 23, 2013.[1]

However, deferring the *Till* interest rate issue does not entirely dispose of the issues raised by Debtor in his Objection to Revital's Claim. The questions remain whether Revital can charge the contractual default rate of interest of 24% between the petition date and the effective date of Debtor's plan, and whether Revital is entitled to charge the late fee of $65,000.00. Both are subject to the reasonableness requirement under §506(b). As concluded by Judge Derby in *In re Consolidated Properties Limited Partnership*, 152 B.R. 452 (BC Md. 1993),

>A default rate of interest that reflects a reasonable attempt to compensate a creditor for extra costs incurred after default is more in the nature of additional "fees, costs, or charges provided for under the agreement" than mere "interest on such claim", which is not tied to an underlying agreement by § 506(b). Section

---

[1]In its opposition to Debtor's objection to the proof of claim, Revital suggests that the appropriate *Till* interest rate is 6.25%,

> 506(b) allows post-petition interest on the claims of oversecured creditors; however, it does not state that oversecured creditors are automatically entitled to a bargained for rate of interest, without limit. . . .
>
> Section 506(b) requires bankruptcy courts to examine the reasonableness of late charges, fees and costs provided under agreements, thereby protecting a debtor's opportunity to reorganize, and perhaps more importantly, preserving some recovery for junior secured and unsecured creditors. Default rates of interest should be treated similarly to late charges and examined for reasonableness by bankruptcy courts. Merely because a creditor fashioned its protection and compensation in the form of an increased default rate of interest under an agreement, it should not escape a reasonableness inquiry, especially when the enhanced default rate of interest is at the expense of junior creditors of the debtor.

*Id*. at 455-456. In addition, Revital's claim must be enforceable under the agreement between the parties and applicable nonbankruptcy law. 11 U.S.C. §502(b)(1); *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 449 (2007). Here, the court finds it patently unreasonable to impose a late fee of 10% for failure to pay the balance due on the Revital Note upon its one-year maturity where the $104,000.00 interest payable over the term of the note was withheld by the lender at the closing on the loan, and an interest rate of 16% was imposed on a massively oversecured obligation.

It is well-established that oversecured creditors are entitled to postpetition interest on their claims until the effective date of a plan. It is equally well-established that oversecured creditors may receive payment of either default interest or late charges, but not both. *In re Market Center East Retail Property, Inc.,* 433 B.R. 335, 365-366 (BC N.M.2010)*; In re Vest Associates*, 217 B.R. 696, 701 (BC S.D.N.Y. 1998); *In re Consolidated Properties Limited Partnership*, 152 B.R. at 458. The analysis in these cases, however, emphasizes the importance of balancing the equities as between the claimant and other creditors. By contrast, the instant case involves no creditors other than Revital. This fact alone leads some courts to enforce bargained-for rights as between a creditor and debtor to the extent that they are enforceable under applicable nonbankruptcy law. *See, e.g.*, *In re Market Center East Retail Property, Inc.,* 433 B.R. at 358 ("In this case, allowance of the default rate will only impact the equity interests. Therefore, the Court also finds no equitable reason not to allow this charge."). In making a determination under 11 U.S.C. §502(b)(1) whether to allow Revital's Claim, the court will also examine the agreement between the parties and its enforceability under applicable law. 11 U.S.C. §502(b)(1).

At the outset, the court considers the status of Revital's contractual rights as of the

petition date. As previously stated, the only copy of the Note in the record is one that is unsigned and undated. As the Deed of Trust was recorded May 19, 2011, and the Property was acquired by Debtor and his wife on that same date according to the public records posted by the Maryland Department of Assessments and Taxation, the court assumes that the loan proceeds were advanced on May 19, 2011, and therefore that the term of the Note commenced on that date. If so, the Maturity Date as defined under the Note was May 19, 2012, and the grace period as defined under the Note ended May 24, 2012. Debtor filed this case on May 25, 2012, at which time, based on the foregoing dates and the terms of the Note, Debtor was in default.

The court next considers whether Revital's claim of a 10% default fee **together with** a 24% default rate of interest is enforceable under applicable nonbankruptcy law. The Note provides that,

> THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE DISTRICT OF COLUMBIA WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES.

In the District of Columbia, commercial mortgage loans [2] are governed by D.C. CODE §§ 28-3301 *et seq.,* also known as the Interest Rate Ceiling Amendment Act. D.C. CODE §28-3301(d)(2) provides that,

(d) Notwithstanding any other provision of this chapter:

> . . .
>
> (2) any loan where the borrower receives the use of an amount in excess of $ 1,000 which is secured directly or indirectly by a mortgage or deed of trust on residential real property, or by a security interest in stock or a membership certificate issued to a tenant stockholder or resident member by a cooperative housing organization, or by the assignment by the way of a security of the borrower's interest in the proprietary lease or right of tenancy in property covered by a cooperative housing organization and the residential real property or cooperative is the place of residence of the borrower, shall only be subject to the provisions of D.C. Official Code, sections

---

[2] While titled as a "Commercial Deed of Trust Note," the obligation appears to have been anything but that. The loan proceeds were used as partial payment of the purchase price for a home in which the Debtor and his wife reside. Debtor does not raise the issue of whether the loan was intended to be a residential loan rather than a commercial loan. Cf. *Sloan v. Urban Title Services, Inc*., 770 F.Supp. 2d 227 (D. D.C. 2011). Under Maryland law, a commercial loan is defined as "a loan which is made (1) Solely to acquire or carry on a business or commercial enterprise; or (2) To any business or commercial organization." MD. CODE ANN. COM. LAW §12-101(c).

28-3301(f), 28-3310, 28-3311, 28-3312, 28-3313, and 28-3314, and it shall be lawful to contract for any rate of interest thereon if any of the conditions set forth in D.C. Official Code, section 28-3301(d)(1)(A), (B), (C), or (D) are satisfied.

This provision would appear to permit the 24% interest rate under the Note. However, D.C. CODE §28-3310(b) provides that,

(b) No delinquent or late charge shall be contracted for or received which does not meet all of the following requirements:
    (1) the delinquency shall have continued for at least 10 calendar days;
    (2) a delinquent or late charge shall not have already been charged for the same delinquent or late periodic installment; and
    (3) the delinquent or late charge shall not exceed 5% of the total amount of the delinquent or late periodic installment of principal and interest.

The late charge under the Note violates this provision in two respects: first, it is assessable when the delinquency continues for a mere 5 calendar days, and second, it is in the amount of 10% of the delinquent payment.

Where there has been a violation of any provision of Chapter 33, a borrower is entitled to bring an action to recover, obtain or enforce reasonable attorney's fees, actual punitive damages, or "any other relief which the court deems proper." D.C. CODE §28-3314(3). Given the high default rate of interest under the Note, the court deems proper relief to be disallowance of the late fee in its entirety. The late fee fails under both District of Columbia law and bankruptcy law.

The court will issue a separate order in accordance with the foregoing.

cc:

John E. Tsikerdanos, Esq., 3 Bethesda Metro Center, Suite 460, Bethesda, MD 20814

Sari Kurland, Esq., 211 Jersey Lane, Rockville, MD 20850

Balla M. Keita, 13111 Piney Meetinghouse road, Potomac, Md 20854

Timothy P. Branigan, Esquire, P.O. Box 1902, Laurel MD 20725-1902

**End of Memorandum of Decision**